UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JUDSON H. BROWN, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : No. 3:09cv1631 (MRK) |
| | : |
| WAYNE C. CHOINSKI, PETER MURPHY, KEVIN ARTZ, | : |
| | : |
| Defendants. | : |

# RULING AND ORDER

On October 13, 2009, Plaintiff Judson H. Brown filed a Complaint [doc. # 1] against three Defendants – Wayne Choinski, Peter Murphy, and Kevin Artz – all of whom are current or former employees of the Connecticut Department of Corrections. The only claim in Mr. Brown's Complaint is that Defendants prevented him from sending letters to a law librarian at the Connecticut Superior Court in New Haven, and later punished him for attempting to send the letters, thereby violating his federal constitutional right of access to courts. *See Christopher v. Harbury*, 536 U.S. 403, 412-18 (2002); *Monsky v. Moraghan*, 127 F.3d 243, 246 (2d Cir. 1997).

Pending before the Court is Defendants' Motion for Summary Judgment [doc. # 22]. In support of that motion, Defendants insist that in order to prevail on a right of access to courts claim, a plaintiff must first demonstrate that the defendant's conduct deprived him of an opportunity to press some nonfrivolous, arguable cause of action in court. *See Christopher*, 536 U.S. at 415. Such a showing is indeed a prerequisite to recovery on a right of access to courts claim. Because Mr. Brown has made no attempt whatsoever to make that required showing, the Court must GRANT Defendants' Motion for Summary Judgment.

1

**I.**

Because this case is currently at the summary judgment stage, the Court sets forth the facts in the light most favorable to Mr. Brown, the nonmoving party here. *See, e.g.*, *DeFabio v. E. Hampton Union Free Sch. Dist.*, 623 F.3d 71, 74 (2d Cir. 2010) (per curiam). Unless the Court notes otherwise, the facts set forth in this Ruling and Order are undisputed.

Plaintiff Judson H. Brown has been in the custody of the Connecticut Department of Corrections ("the Department") since October 2001. Starting on March 22, 2007, Mr. Brown was incarcerated at MacDougall-Walker Correctional Institution ("MacDougall-Walker") in Suffield, Connecticut. Defendant Kevin Artz is a Correctional Officer with the Department. In January 2009, Officer Artz was assigned to the Facility Intelligence Unit at MacDougall-Walker, where his responsibilities included reviewing incoming and outgoing inmate mail. His first task in reviewing any envelope sent out by or addressed to an inmate was to determine whether it contained mail that was privileged under the Department's regulations. If he determined that an envelope contained privileged mail, then the envelope could not be opened or inspected by anyone other than the inmate. Under the Department's regulations, any mail sent to or received from an attorney, or addressed to or from any federal, state, or local elected or appointed official, including any judge or court, was supposed to be treated as privileged.

On January 28, 2009, Officer Artz examined an envelope that Mr. Brown intended to send out of MacDougall-Walker. The envelope was addressed to "Attorney: A.C. Brazzell, LLC." Mr. Artz recognized A.C. Brazzel as the name of a person from whom Mr. Brown had received personal mail in the past and checked the name against Mr. Brown's visitor list. Officer Artz determined that Mr. Brazzel was Mr. Brown's uncle, and not an attorney. Officer Artz opened the envelope and found that it contained a copy of an investment magazine; ten

envelopes addressed to individuals and businesses other than Mr. Brazzel; and a letter to Mr. Brazzel instructing him to forward those ten envelopes on Mr. Brown's behalf.

As a result of the incident in which he attempted to send personal mail – apparently pertaining to investment opportunities that Mr. Brown hoped to pursue from prison – to Mr. Brazzel in the guise of privileged legal mail, Mr. Brown received a ticket for security tampering. Mr. Brown was later found guilty of security tampering.[1] As punishment for that violation, Mr. Brown was placed in the Restrictive Housing Unit ("the Unit") and was denied the privilege of sending or receiving social correspondence through May 2009.

On February 18, 2009, while Mr. Brown was being housed in the Unit and was prohibited from sending or receiving social correspondence, Officer Artz inspected two envelopes that Mr. Brown had explicitly marked as containing "legal mail." The first was addressed to the "Federal & Surplus Property Distribution Center" in Wethersfield, Connecticut. The Connecticut State and Federal Surplus Program, which is located at that address, is responsible for transferring surplus public property – for example, surplus government vehicles – to state agencies; selling such surplus property to municipalities; and in some cases conducting public auctions of any remaining surplus property. *See State and Federal Surplus Program*, Connecticut Department of Administrative Services State Procurement Marketplace, http://www.das.state.ct.us/cr1.aspx?page=37 (last visited Mar. 21, 2011). The second envelope was addressed to "Law Library Department, Ann Doherty Librarian, 235 Church Street, New Haven, Connecticut" – that is, to a Superior Court law librarian. Officer Artz determined that neither envelope contained privileged mail and therefore opened both.

---

[1] This was not Mr. Brown's first disciplinary problem while in the custody of the Department. It is undisputed that during his incarceration, Mr. Brown has been found guilty of eleven different disciplinary violations, including nine for security tampering.

The second envelope contained a letter to the law librarian that read: "I would like your help getting a 'Copy' of the state laws for outgoing legal mail for prison inmates . . . would sending mail to a person who has 'power of attorney' be called legal mail? Or would that person need to be a active attorney to call that legal mail?" Ex. 1 to Pl.'s Mem. in Opp. [doc. # 26-3] at 3. After examining the contents of the two envelopes, Officer Artz issued Mr. Brown another disciplinary report charging him with security tampering.

On February 19, 2009, while Mr. Brown was still being housed in the Unit and was still prohibited from sending or receiving social correspondence, Officer Artz inspected another envelope addressed to the Superior Court law librarian.[2] The envelope contained a letter to the law librarian that read: "I would like your legal help and [getting] a copy of the rights of legal mail [correspondence] between attorney inmate mail; going out mail and going too inmate's by; attorneys; people who are or have 'power of attorney;' federal & state Government appointed privilege or legal mail, and legal [definition] between (privilege & legal mail,) for the State of Connecticut . . . ." Ex. 2 to Pl.'s Mem. in Opp. [doc. # 26-3] at 6. Based on his determination that the envelope contained social, rather than legal correspondence, and because Mr. Brown had been ordered not to send or receive social correspondence, Officer Artz issued yet another disciplinary report charging Mr. Brown with disobeying a direct order.

Shortly after the February 18, 2009 and February 19, 2009 incidents, Mr. Brown sent four letters to Defendant Peter Murphy, the Warden at MacDougall-Walker. Mr. Brown complained that Officer Artz had prevented him from sending privileged "legal mail" that was marked as such. Warden Murphy responded to Mr. Brown's letters,[3] but despite Mr. Brown's complaints, Mr. Brown was ultimately found guilty following an internal hearing of two counts of security

---

[2] Mr. Brown did not explicitly indicate anywhere on the envelope that it containted legal mail.
[3] Neither party has introduced copies of Warden Murphy's responses into the record.

tampering and one count of disobeying a direct order. The officer who conducted the hearing reported Mr. Brown to Captain Scott Van Oudenhove[4] – who was responsible for determining whether an inmate was a chronic disciplinary violator – that given Mr. Brown's history of disciplinary violations and his new violations, Mr. Brown could have been classified as a chronic disciplinary violator. But Captain Oudenhove made no attempt to have Mr. Brown classified as a chronic disciplinary violator at that time. Mr. Brown appealed the guilty findings to Defendant Wayne Choinski, the District Administrator, who upheld those findings.

On March 17, 2009, Mr. Brown returned to the Unit based on a finding that he was guilty of an unrelated security tampering violation that he does not challenge here. Mr. Brown was again sanctioned with loss of social correspondence for that unrelated violation. Based on that additional violation, Captain Oudenhove convened a hearing to determine whether Mr. Brown should be classified as a chronic disciplinary violator. Mr. Brown argued that his prior violations could not serve as a proper basis for classifying him as a chronic disciplinary violator.[5] Following the hearing, Captain Oudenhove recommended to a Unit Administrator[6] that Mr. Brown should be reassigned from MacDougall-Walker to attend the Chronic Discipline Program at Northern Correctional Institution ("Northern") in Somers, Connecticut, which is Connecticut's highest-security prison. The Unit Administrator, in turn, recommended to the Director of Offender Classification and Population Management[7] that Mr. Brown should be reassigned to attend the Chronic Discipline Program at Northern. Finally, on April 7, 2009, the Director of Offender Classification and Population Management reassigned Mr. Brown to attend the Chronic

---

[4] Captain Oudenhove was never joined as a defendant in this action.
[5] It appears that Mr. Brown's specific objection was that he was inappropriately found guilty of two different violations base on only one incident.
[6] The Unit Administrator was never joined as a defendant in this action.
[7] The Director of Offender Classification and Population Management was never joined as a defendant in this action.

5

Discipline Program at Northern. After Mr. Brown completed the program, he was reassigned to Garner Correctional Institution in Newtown, Connecticut, a lower-security facility. Mr. Brown has not had any further disciplinary issues since he left Northern.

## II.

This Court must apply a familiar standard when resolving a motion for summary judgment. Summary judgment is appropriate only when the "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" submitted to the Court "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(1)(A); Fed. R. Civ. P. 56(a). "As to materiality, the substantive law governing the case will identify those facts that are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Summary judgment must be rejected "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). However, the party against whom summary judgment is sought cannot prevail by "simply show[ing] that there is some metaphysical doubt as to the material facts," and instead "must come forward with specific facts showing that there is a *genuine issue* for trial." *Matshushita v. Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 & n.11 (1986) (quotation marks and citations omitted).

## III.

It is well established that United States Constitution protects the right of access to courts. *See Christopher*, 536 U.S. at 414-15. The precise textual grounding of the constitutional right of access to courts is not conclusively settled. *See Christopher* 536 U.S. at 415 & n.12. Various

6

Supreme Court decisions have grounded the right of access to courts in the Article VI Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection and Due Process Clauses. *See id.*

Although the textual grounding of the right of access to courts is disputed, there can be no dispute that the right of access to courts is a narrowly limited right. *See id.* at 415; *Monsky*, 127 F.3d at 247. The Supreme Court has held that the right of access to courts "is ancillary to [the existence of an] underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher*, 536 U.S. at 415. Because of that important limitation, a plaintiff cannot prevail on a right of access to courts claim unless he or she can show that a defendant's conduct deprived him or her of an opportunity to press a "nonfrivolous" and "arguable" legal claim in court, upon which he or she would have had "more than hope" of victory. *Id.* at 416. As the Second Circuit has recognized, while "emotional distress and humiliation" and other injuries often result from the same types of conduct that plaintiffs target in right of access to courts claims, injuries other than the denial of an opportunity to press a potentially successful legal claim are not "the type[s] of actual injur[ies] that give[] rise to a constitutional claim of denial of access to the courts." *Monsky*, 127 F.3d at 247.

The Court emphasizes at the outset that it may or may not be true that some of the mail that Mr. Artz and the other Defendants prevented Mr. Brown from sending should have been considered privileged under the Department's own internal regulations. Those regulations provide that any mail sent to or received from a federal, state, or local elected or appointed official, including a court, is to be considered privileged. Mr. Brown's letters to the Surplus Program and to the Connecticut Superior Court law librarian may have been sent to "state officials" broadly construed, and further, the letter to the law librarian was sent to the address of

7

a state court. On the other hand, it is not clear whether the law librarian specifically or anyone at the Surplus Program held an elected or appointed government position.

However, the issue here is not whether any of the mail Mr. Brown sent was privileged under the Department's regulations. The issue is not even whether the general restrictions that the Department imposed on Mr. Brown's ability to send and receive mail were consistent with his First Amendment rights. *See Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (holding that restrictions on prisoners' mail are justified if they further a substantial governmental interest in security, order, and rehabilitation and are no greater than necessary or essential to the protection of such an interest, and noting that "isolated incident[s] of mail tampering [are] usually insufficient to establish a [First Amendment] violation"). Instead, because Mr. Brown's only claim is a right of access to courts claim, the only relevant issue is whether Mr. Brown lost an opportunity to file a potentially successful civil action against the Department or any other defendant because of his inability to send correspondence to the Superior Court law librarian. *See Christopher*, 536 U.S. at 416.

There are three distinct problems with Mr. Brown's right of access to courts claim that prevent this Court from granting him relief on that claim.

*First*, as Mr. Brown's counsel admitted at oral argument, while Mr. Brown was barred from sending social correspondence during the period of time at issue in this case, he was never barred from filing complaints against the Department or its employees. He was only barred from sending business-related letters to his uncle; from sending business-related inquires to the Surplus Program; and from sending legal research inquiries to the Superior Court law librarian. Further, as Mr. Brown's counsel did not contest at oral argument, other forms of legal research assistance were available to Mr. Brown at MacDougall-Walker. Thus, throughout the time when

Mr. Brown was barred from filing social correspondence, nothing prevented him from initiating or pursuing lawsuits against the Department or its employees, or from accessing the inmate legal assistance program at MacDougall-Walker to get help in pursuing such lawsuits.

*Second*, Mr. Brown never attempted to pursue any legal claim against the Department or its employees until he filed his right of access to courts claim in this case, and as the Court has already made clear, a plaintiff cannot prevail on a right of access to courts claim unless he can show that the defendants' conduct prevented him from filing a potentially successful claim in court. *See id.* Mr. Brown has never made any attempt to explain what nonfrivolous, arguable cause of action he might have pursued had Defendants not confiscated his letters to the Superior Court librarian. Mr. Brown's Complaint does not say what cause of action he lost the ability to press in court. *See id.* at 415 (holding that "the underlying cause of action . . . is an element [of a right of access to courts claim] *that must be described in the complaint*" (emphasis added)). Mr. Brown made no attempt to argue in opposition to Defendants' Motion for Summary that Defendants' conduct prevented him from filing or pursuing any specific legal claim. Finally, Mr. Brown's counsel conceded at oral argument that he was unable to identify any plausibly successful claim that Mr. Brown lost the ability to pursue as a result of Defendants' conduct.

*Third*, Mr. Brown counsel has not asked this Court to recognize an exception to the usual requirement that a plaintiff claiming a violation of his or her right of access to courts must show that he or she lost an opportunity to press a nonfrivolous and arguable legal claim. Nor could he reasonably have advocated for such an exception. The Supreme Court has clearly held that *every* plaintiff asserting a denial of access to courts claim must show that he or she lost the ability to pursue a nonfrivolous claim as a result of the defendant's conduct. *See id.*

Therefore, the Court has no choice but to grant Defendants' Motion for Summary

Judgment. *See DeLeon v. Doe*, 361 F.3d 93, 94 (2d Cir. 2004) (per curiam) (affirming district court's decision to dismiss right of access to courts claim because the plaintiff failed to allege that the defendant's actions hindered his effort to seek relief on a legal claim); *Oliphant v. Villano*, No. 09cv862 (JBA), 2010 WL 4909238, at *9 (D. Conn. Nov. 24, 2010) (denying motion for injunctive relief on right of access to courts claim because the plaintiff did not allege that the defendant's actions hindered his effort to pursue a claim); *Riles v. Bannish*, No. 10cv652 (RNC), 2010 WL 3169391, at *3 (D. Conn. Aug. 11, 2010) (granting motion to dismiss right of access to courts claim for the same reason); *Awan v. Lapin*, 2010 WL 963916, No. 09cv126 (JG), at *10-11 (E.D.N.Y. Mar. 17, 2010) (same).

## IV.

In sum, the Court concludes that Mr. Brown has failed to identify any nonfrivolous, arguable cause of action which he was unable to pursue as a result of Defendants' conduct. For that reason, the Court GRANTS Defendants' Motion for Summary Judgment [doc. # 22]. **The Court directs the Clerk to enter judgment for Defendants and to close this file.**

IT IS SO ORDERED.

/s/      Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: March 23, 2011.**